THE TOWN OF WINDSOR

*v.*

DANIEL B. HALLETT.

*Filed at Springfield November 26, 1880.*

1. PLEADING—*non est factum in assumpsit.* The plea of *non est factum,* in an action of assumpsit brought upon interest coupons attached to corporate bonds, is not a proper plea, and there is no error in striking it from the files.

2. SAME—*where evidence is admitted under general issue no error in sustaining demurrer to special pleas.* Where all of the evidence is admissible under the general issue, that could have been presented under special pleas to which a demurrer was sustained, and such evidence was so admitted, the court will not consider an assignment of error for sustaining the demurrer.

3. Municipal bonds—*power of towns to issue.* Under sections 8, 9 and 10 of the charter of the Bloomington and Ohio River Railroad Company, adopted March 10, 1869, power was conferred on towns along the line of such road to vote, under the notices therein specified, for and against the issue of township bonds as a donation in aid of the construction of its road, and upon a vote in favor of the same, the power was conferred to issue such bonds.

4. Same—*of the notice of the election.* Under a law providing for a vote whether a township shall issue bonds in aid of a railroad, which requires the town clerk, upon receiving the proper petition, to "immediately give the notice required by law for an election," etc., it was *held,* that three notices were all that were required to be posted of the time and place of the election, the same as of an annual town meeting, and not five, as the law then required in case of a special town meeting.

5. Same—*who are corporate authorities of a town to issue its bonds voted.* Under a law which authorizes the "proper corporate authorities" of a township to issue the bonds of the town when so authorized by a vote of the electors at an election called for that purpose, the supervisor and town clerk must be regarded as the proper corporate authorities for the issue and delivery of the bonds, it being but a ministerial act, though they are not such for the purpose of creating the indebtedness. There is a broad difference between the creation of a debt and merely executing the evidence of it.

Appeal from the Appellate Court for the Third District;— heard in that court on error to the Circuit Court of Shelby county; the Hon. Charles S. Zane, Judge, presiding.

Messrs. Henry & Cook, and Mr. T. F. Dove, for the appellant.

Messrs. Thornton & Hamlin, and Messrs. Moulton, Chafee & Headen, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

This record shows that the township of Windsor, in Shelby county, in this State, issued its bonds to the amount of $50,000 as a donation, and in aid of the construction of a railroad passing through its limits. An election was held, in pursuance of notices given, on the 7th day of October, 1869, to determine whether the donation should be made. It was held under authority conferred by the charter of the Bloomington and Ohio River Railroad Company, adopted on the

10th day of the previous March.   The election resulted in
favor of the donation, and the supervisor and town clerk
issued the bonds, with interest coupons attached thereto,
and this suit was brought on ten of these over due coupons,
payable on the 1st day of January, 1878, they being for the
sum of one hundred dollars each.

The action was assumpsit, and the declaration contained
a count on each coupon.   The defendant filed the general
issue, a plea of *non est factum*, and five special pleas.   Issue
was joined on the general issue, and the plea of *non est factum*,
on motion of the plaintiff, was stricken from the files, and a
demurrer was sustained to each of the special pleas.   The
defendant abided by his special pleas, and went to trial on the
general issue, and there was a finding and recovery for the
plaintiff.   Defendant thereupon removed the case to the
Appellate Court, where the judgment of the circuit court was
affirmed, and the defendant brings the case to this court, and
assigns various errors.

The plea of *non est factum* was, for obvious reasons, an
improper plea in the case, and there was no error in striking
it from the files.

It is assigned for error that the court sustained a demurrer
to each of the special pleas.   We deem it unnecessary to
discuss this assignment of error, as the defendant, on the trial
in the circuit court, introduced all of the evidence that would
have been admissible had any of the special pleas been found
to be good.   Some of them, if not all, are clearly bad, and, if
any are good, no more evidence would have been heard under
them than was allowed on the trial under the general issue.
The defendant has therefore suffered no wrong, even if the
court erred in sustaining the demurrer.   All the evidence
heard was admissible under that issue, and pleading the facts
rendered it no more admissible.   It would answer no bene-
ficial purpose, therefore, to discuss this assignment of error.

We will, however, proceed to the consideration of such
of the errors assigned as seem to be material to the

decision of the case. On the record presented from the Appellate Court, as it has, by affirming the judgment, found the facts, we can only consider questions of law, the statute prohibiting us from the consideration and settlement of controverted facts in the case.

In the circuit court, one of the controverted facts was whether the road was completed through the township, and the other conditions on which the donation was voted had been complied with at the time the bonds were issued. These facts were found for appellee. It was also a controverted question whether there was a proper petition presented to the town clerk to authorize him to call an election. Whether proper notices had been posted of the time and place of the election ; whether the election was held, the vote duly canvassed, and whether a majority voted for donation, and the correct result announced, were all controverted questions and found for appellee. So was the controverted question whether the supervisor executed and delivered the bonds. The controverted fact of whether the bonds were delivered in escrow—upon condition, or absolutely—was found against appellant.

It is claimed that the circuit court erred in admitting a copy of the petition presented to the town clerk, copies of the notices of the election, given and posted by him, of the tally list, and the certificate of the result of the election by the judges and clerks of the election, and of an affidavit made by the town clerk that he had posted the notices for thirty days before the election in three of the most public places in the township, naming them.

It is insisted that a proper foundation was not laid to admit secondary evidence, and the originals should have been produced. We think a sufficient search for the originals was proved, to show their loss. And the town clerk acting at the time, and who gave the notices, testified that he had copied correctly all of these papers in the town record book ; that he had given the notices of which they were the originals.

The identity of these as copies of the originals was proved by him, and they were properly admitted in evidence.

But it is urged that the vote, as taken, did not authorize the bonds to issue. It is not contested that this township was authorized by the charter to vote the donation, but it is contended that the authority was not pursued, and the non-conformity to the requirements of the act giving the power was such as to render the bonds void.

In the case of *Town of Prairie* v. *Lloyd, ante,* p. 179, sections 8, 9 and 10, of the company's charter, were under consideration for construction. After a careful consideration they received a construction. It therefore becomes unnecessary to repeat the reasons there presented for the conclusion there reached. It was there held, that under these sections there was power conferred on the electors of the town to vote, under the notice given, for and against the issue of such bonds, and that when the vote resulted in favor of the proposition, the vote conferred, under these sections, power to issue the bonds. The power must be considered as existing. This, then, disposes of the question whether there was power to vote for the issue of bonds, and thus bind the town for their payment when properly issued.

It is urged that the required notice was not given, and hence power to issue the bonds was not conferred by the vote. The ninth section of the charter requires the town clerk to give "the notice required by law," and he only posted three notices, and as the law requires five to be posted for a town meeting, that this latter number was essential. We can not yield assent to this proposition. The charter did not require the vote to be taken in town meeting, but at an election in the town. The language is, that the town clerk, on receiving the required petition, shall "immediately give the notice required by law for an election to be held by the legal voters of * * * such township, at the usual place of holding elections." What is the notice required by law? The fifty-second section of the township organization

law requires the town clerk to give ten days' notice by posting printed or written notices of town meetings in three of the most public places in the township, and this was the requirement when this election was held. It is true, the eighth section of article 4 of the act of 1861, required notices for special town meetings to be posted in five of the most public places in the township. The law, as it now stands, requires notices to be posted in but three places, for either general or special meetings. We are unable to see that this was not the notice required by law. It was not for a town meeting of either character, but was for an election to be conducted as other elections. At the annual meeting an election is held for officers by opening poll-books, receiving ballots, making tally lists, and ascertaining and certifying who is elected. And this was for an election, not of officers, but to determine the question submitted to their votes. The ninth section of the charter requires an election, and not a town meeting. The latter, in its proper sense, is not an election. It is a meeting for the transaction of the business of the town, the adoption of by-laws, and other matters of that character. But at an annual town meeting those engaged in it hold an election, conducted like other elections, for the town officers, and such an election was, no doubt, contemplated by the framers of the ninth section; and the number of notices therefor is all that is required by the charter. Had it required the calling of a special town meeting, then it may be five notices would have been required, but it was an election that was to be called.

It is next insisted that the supervisor and town clerk do not represent the corporate authority of the township, and the act only confers the power on the "proper corporate authority." The expression is indefinite when applied to an organized township. The township organization law has not in terms declared what officers shall represent the corporate authority. In private corporate bodies the president is the head of the corporation, and represents its authority in the

transaction of its business with strangers to the organization. So the supervisor for many purposes acts as the head or representative of the corporation. The voters, perhaps, are vested with larger powers than any of its officers, and the same is true of the board of directors of a private corporation, and yet its president is the head or representative officer.

When the charter was passed it was the duty of the supervisor, when the corporation was sued, to attend to its defence and report to the next town meeting; when the town meeting directs real estate to be conveyed, unless some other person is designated for the purpose, the conveyance shall be signed by the supervisor in his official capacity, and attested by the town clerk. He is also empowered and it is made his duty to prosecute for penalties and forfeitures to the town. In suits against the town process is required to be served on him. Thus it is seen that he is made, in all of these, and it may be other matters, the head or representative of the town. And above all he is the representative of his town in the county board, and entrusted with the interests of his town in that body. We may, therefore, conclude that he was the proper corporate authority to issue the bonds, attested by the town clerk, as it was but a ministerial act to evidence the indebtedness voted by the electors.

Again, in empowering townships to incur indebtedness, and issue evidence thereof, the General Assembly, in all of the great number of acts passed for the purpose, where the officers have been named to issue the bonds, have designated the supervisor and town clerk, it is believed, in every instance. From this action of the General Assembly we are warranted in the conclusion that they regarded these officers as the proper corporate authority to perform the act. This is almost as satisfactory as had they been specifically declared to be the "proper corporate authority." We must, therefore, hold that these bonds were issued by the proper officers.

This question, as now presented, has never been before us for determination. And what has been said as to village authorities has no controlling application in this case. Nor does the fact that it has been held that they are not the authorities the constitution has designated to incur the town indebtedness militate against the position here maintained. There is a broad difference between the creation of a debt and merely executing evidence of the debt. Whilst the voters of a town can alone create the debt, and are for that purpose the town authorities, the supervisor and town clerk may be the authorities who may issue the bonds, and such we think is the fact. In one or two cases it has been held that they are not the authorities that the General Assembly may authorize to incur a debt, but we have not held, nor did we intend to hold, they were not the authorities to issue town bonds.

In those cases it was said that persons not elected or appointed by the voters of the corporation were not corporate authorities within the provisions of the constitution. These officers were elected by the people, and are corporate authorities.

It is also urged that, as this donation was voted before the adoption of the constitution of 1870, under the decisions of this court the holders of the bonds issued thereunder after that instrument went into effect, can not recover unless they prove this election to have been held in conformity to all of the substantial requirements of the law under which it was held. Conceding this to be true in its broadest scope, still we have seen all of these requirements were found by the circuit court to have been performed, and that finding has been affirmed by the Appellate Court. And as these were contested facts we are prohibited from re-examining them, but must take them as true.

On the entire record, after a laborious examination, slightly aided by an imperfect abstract, we have found no error for which the judgment of the Appellate Court should be reversed, and it must be affirmed.                    *Judgment affirmed.*

Dickey, Ch. J.: I can not concur in this decision. Where a defendant has interposed a special plea to which plaintiff demurred, and the demurrer has been sustained and the defendant abides by his special plea,—and where, in the same case, under an issue formed upon the plea of *non-assumpsit,* proofs are heard in relation to the same facts alleged in the plea, and that issue is found against defendant, I do not think that we are to reject the confession on the demurrer by plaintiff that the facts alleged in the special plea are true. If the special plea, confessed to be true, does present a good defence to the action, defendant is entitled to judgment in bar on that plea, no matter what proceedings may be had under another plea in the same case. Nor do I concur in the construction given to sections 8, 9 and 10 of the railroad charter. My views on that subject are given in a dissenting opinion in the case of *Town of Prairie* v. *Lloyd, ante,* p. 179.